Malone Jr., J.
Respondent’s parental rights were involuntarily terminated as to three of his five children in 2002 as a result of a prior permanent neglect and abuse proceeding (Matter of Curtis N., 302 AD2d 803 [2003], lv denied 100 NY2d 535 [2003]). In that proceeding it was established that, in 1997, respondent had repeatedly sexually abused his then 10-year-old daughter and that the following year he had been convicted, upon his plea of guilty, of sodomy in the first degree (see Penal Law former § 130.50 [5]), sentenced to a term of imprisonment and classified as a risk level two sex offender.
The child subject to the instant proceeding, a daughter, was born in August 2008. Within days of her birth, the child was placed in foster care, and petitioner commenced a neglect proceeding against respondent and the child’s mother. Family Court ultimately adjudicated the child to be neglected and the child remained in foster care. In February 2010, the child’s mother surrendered her parental rights and, shortly thereafter, petitioner commenced the instant proceeding, alleging that respondent had permanently neglected the child by failing to meaningfully plan for her future, and sought to terminate respondent’s parental rights. Petitioner also moved for an order relieving it from its obligations to make further reasonable efforts to reunite respondent with the child, which motion was granted by the court without a hearing. Following the ensuing fact-finding hearing, the court adjudicated the child to be permanently neglected and, following a dispositional hearing, determined that the termination of respondent’s parental rights was in the child’s best interests. Respondent appeals.
Initially, we find no error with Family Court’s order relieving petitioner of its obligation to make reasonable efforts to reunite respondent with his daughter. Petitioner established by clear and convincing evidence that respondent’s parental rights had been involuntarily terminated as to three of his other children (see Family Ct Act § 1039-b [b] [6]), and that, although respondent had participated in the services offered to him, he had failed to meaningfully benefit therefrom, as evidenced by the fact that he continued to minimize his responsibility for sexu *860 ally abusing his older daughter. In opposition to the motion, respondent failed to establish that requiring petitioner to continue to make reasonable efforts would be in the child’s best interests, “ ‘not contrary to the health and safety of the child, and would likely result in the reunification of [respondent] and the child in the foreseeable future’ ” (Matter of Sasha M., 43 AD3d 1401, 1402 [2007], quoting Family Ct Act § 1039-b [b]; see Matter of Marino S., 100 NY2d 361, 372 [2003], cert denied sub nom., Marino S. v Angel Guardian Children & Family Servs., Inc., 540 US 1059 [2003]). We are not convinced that the court erred in deciding the motion without a hearing inasmuch as respondent’s answering papers did not establish that any genuine issue of fact existed (see Matter of Carlos R., 63 AD3d 1243, 1245 [2009], lv denied 13 NY3d 704 [2009]; Matter of Damion D., 42 AD3d 715, 716 [2007]).
Contrary to respondent’s contention, Family Court properly determined that he had permanently neglected his child in that, for a period of more than one year following the child’s placement with petitioner, respondent failed to substantially plan for the child’s future, although he was physically and financially able to do so (see Social Services Law § 384-b [7] [a]). Petitioner established by clear and convincing evidence that, although he participated in the programs and services recommended to him, respondent continued to deny that he had engaged in certain acts of sexual abuse against his older daughter, despite the fact that he had previously allocuted to those charges as part of his guilty plea in criminal court. Although respondent admitted that he had engaged in one act of “reciprocal” oral sex with his daughter, he frequently minimized the severity of the situation by blaming others, including his ex-wife, his mother and, at times, his daughter, for manufacturing the allegations against him and, in his opinion, blowing the situation out of proportion. Although respondent’s incest offender group counselor opined that incest offenders typically needed at least three to five years of treatment before they could be safely reintroduced into their families without supervision, respondent denied that he needed that much treatment, stating that he felt that he was an “exception” to that rule.
Based on his testimony, it is evident that respondent has failed to gain any insight into the circumstances that led to the child’s removal from his care, and.that he has failed to benefit meaningfully from the services provided by petitioner (see Matter of James U. [James OO.], 79 AD3d 1191, 1193 [2010]; Matter of Joseph ZZ., 245 AD2d 881, 884 [1997], lv denied 91 NY2d 810 [1998]). Furthermore, although long-term foster care has been *861 repeatedly rejected as a suitable plan for a child’s future (see e.g. Matter of Trestin T. [Shawn U.], 82 AD3d 1535 [2011], lv denied 17 NY3d 704 [2011]; Matter of Kyle M., 5 AD3d 489 [2004]), respondent’s stated plan for his child was simply that she remain in foster care for as long as it took for it to be deemed safe for him to take custody of her. Based on the record before us, we find Family Court’s finding of permanent neglect to be supported by clear and convincing evidence. Moreover, the evidence at the dispositional hearing provides a sound and substantial basis for Family Court’s finding that the termination of respondent’s parental rights, rather than an entry of a suspended judgment, was in the child’s best interests (see Family Ct Act § 631; Matter of Carlos R., 63 AD3d at 1246; Matter of Aidan D., 58 AD3d 906, 909 [2009]).
Respondent’s remaining contentions have been considered and found to be without merit.
Peters, P.J., Lahtinen, Spain and Garry, JJ., concur. Ordered that the order is affirmed, without costs.